**UNITED STATES v. POPHAM.**

No. 14505.

United States Court of Appeals
Eighth Circuit.

July 10, 1952.

A. F. Prescott and Fred S. Gilbert, Jr., Sp. Assts. to Atty. Gen., Sam M. Wear, U. S. Atty., and Harry F. Murphy, Asst. U. S. Atty., both of Kansas City, Mo., on the brief), for appellant.

Sam Mandell and Arthur C. Popham, Jr., Kansas City, Mo. (Popham, Thompson, Popham, Mandell & Trusty, Kansas City, Mo., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

The United States appeals from a decision of the District Court for the Western District of Missouri in an action by the appellee, Popham, for recovery of an alleged overpayment of income taxes for 1943. The sole issue presented is whether for income tax purposes appellee was "in active service in the military * * * forces of the United States * * * at any time during the taxable year * * * 1943" within the meaning of section 6(d) (1) of the Current Tax Payment Act of June 9, 1943, 57 Stat. 126, 146, 26 U.S.C. A. § 1622 note.[1] It is conceded that if the appellee was in active service in the military forces of the United States within the meaning of the Act, the judgment of the District Court in his favor should be affirmed.

Appellee enlisted in the Civil Air Patrol on February 10, 1942. He volunteered for active duty at the Southern Liaison Patrol Base No. 2 of the Civil Air Patrol at Biggs Field, El Paso, Texas, where he reported for duty on February 10, 1943, and where he served for the remainder of that year. Southern Liaison Patrol Base No. 2 was one of the bases organized to patrol the land frontier from Brownsville, Texas, to

Harry Marselli, Sp. Asst. to Atty. Gen. (Ellis N. Slack, Acting Asst. Atty. Gen.,

---

[1] "Sec. 6. Relief From Double Payments In 1943.

\* \* \* \* \* \*

"(d) *Rules for Application of Subsections (A), (B), and (C).—*

"(1) *Application of subsection (B) to members of armed forces.—*If the taxpayer is in active service in the military or naval forces of the United States or any of the other United Nations at any time during the taxable year 1942 or 1943, the increase in the tax for the taxable year 1943 under subsection (b) (1) shall be reduced by an amount equal to the amount by which the tax for the taxable year 1942 (determined without regard to this section) is increased by reason of the inclusion in the net income for the taxable year 1942 of the amount of the earned net income (as defined in section 25(a) (4))."

the Arizona border under the direction of the Southern Defense Command of the United States Army. The patrol to which appellee was assigned was charged with air reconnaisance of the southern frontier from Arizona south to the vicinity of Del Rio, Texas, and replaced an Air Force observation squadron.

The personnel of the local Civil Air Patrol groups were eligible, according to experience and training, to volunteer for an active duty assignment at a patrol base. On assignment members of the Civil Air Patrol took an oath of duty, identical with that given the members of the United States Army and Navy upon induction, to carry out the orders of the President of the United States and the officers appointed over them. They were subject to court martial and to the rules and articles of war. They were required to wear the prescribed uniform, and to enlist for a minimum period of three months active duty. While in active service they flew aircraft provided and maintained by the War Department. On operational flights they were armed with Thomson submachine guns and .38 caliber revolvers with appropriate ammunition, and were under orders to seek out, engage, and repel the enemy. While on active duty their only compensation was a subsistence allowance of $8.00 a day. Appellee served as a pilot and for a time as a staff officer with the rank of first lieutenant.

Since the evidence is uncontradicted that appellee performed service of a military character necessary to the defense of the southern land frontier as the trial court found, he contends that the question on this appeal is one of fact upon which this court is bound by the finding of the lower court. But the question presented is not so easily answered. The question is not whether appellee rendered an active military service in the defense of the United States, but whether that service was rendered in the military forces of the United States within the meaning of the section of the Revenue Act relied upon. The question is, therefore, one of interpretation of a section of the Current Tax Payment Act of 1943 granting an exemption or exclusion from income tax to a particular class of taxpayers. Under the established rules we are required to give the statute a strict interpretation in deciding whether one claiming the benefit of the Act comes within the class to which the exemption is granted. The case of Epley v. Commissioner, 5 Cir., 183 F.2d 1020, on which appellee relies for a liberal interpretation of the Act is not in point. There the court held that, in determining the extent to which one clearly within the exempted class was entitled to the exemption granted, the Act should receive a liberal interpretation. Conceding that the Epley case correctly states the law on the question there involved, it has no application in the present circumstances. United States v. Stewart, 311 U.S. 60, 71, 61 S.Ct. 102, 85 L.Ed. 40; Helvering v. Northwest Steel Mills, 311 U. S. 46, 49, 61 S.Ct. 109, 85 L.Ed. 29; Harding Glass Co. v. Commissioner, 8 Cir., 142 F.2d 41, 44.

In the Current Tax Payment Act of 1943 Congress was presented with the problem of how a change could be made from the payment of taxes after the end of the taxable year to the pay-as-you-go system during the taxable year, without on the one hand placing upon the taxpayers the burden of paying two years' taxes in one year, or on the other hand depriving the Government of all income tax revenue for one year. It solved the problem by section 6 of the Act entitled "Relief From Double Payments In 1943." This section provided for the complete cancellation of taxpayers' 1942 liability as of September 1, 1943, but, in order to avoid windfalls for certain taxpayers, provision was made to recoup a part of the 1942 tax liability. Where the 1942 tax was greater than the 1943 tax, the section provided that the 1943 tax should be increased by the amount by which the 1942 tax exceeded the 1943 tax. The effect of this provision was to avoid double tax payments in one year, while requiring the taxpayers to pay at least the tax for which they were liable under existing law. But taxpayers on active duty in the armed forces at any time during the year 1942 or 1943 were granted an exemption from this provision of the Act. Since the appellee's income for 1942 was greater than his income for the year 1943 and since all his income for-

1942 was earned income, appellee if in active service in the military forces of the United States within section 6(d)(1) is not liable for the tax for 1943 which he has paid and seeks to recover.

The Office of Civilian Defense was set up as a purely civilian organization by Executive Order No. 8757 of May 20, 1941 (6 Fed. Register 2517),"to facilitate constructive civilian participation in the defense program." Executive Order No. 8757 was amended by Executive Order No. 9134 of April 15, 1942 (7 Fed. Register 2887). By this amendment the director of the Office of Civilian Defense was required to "Study and plan programs designed to afford adequate protection of life and property against war hazards; sponsor and carry out such civil defense programs as may be necessary to meet emergency needs, including the recruitment and training of civilian auxiliaries * * *."

On April 29, 1942, the director of the Office of Civilian Defense issued Administrative Order No. 23 confirming the establishment "within the Office of Civilian Defense" of certain divisions or agencies among which was the Civil Air Patrol. The order provided that "The Civil Air Patrol is under the supervision of the Office of Civilian Defense and is headed by the National Commander of the Civil Air Patrol appointed by and responsible to the Director," and that the Civil Air Patrol is "composed of volunteer members engaged in civilian air activities, including the performance of such missions as shall be requested by the United States Army or Navy or the other departments or agencies of the United States Government, such as observation and patrol flying, courier service, ferry service, forest patrol, and other types of activity prescribed by the Director and appropriate to be performed by the Civil Air Patrol."

Administrative Order No. 23 referred to an official publication of the Office of Civilian Defense entitled "Civil Air Patrol—Organization, Purpose, Program, Enlistment," a copy of which was attached and made a part of the order. This official publication emphasized the civilian character of the Civil Air Patrol, composed of volunteers from civilian aviation, and the necessity for its use by the military services or other agencies of the Government in the defense of the nation. The order and the official publication of the Office of Civilian Defense made a part of the order show beyond dispute that from its creation the Civil Air Patrol was a strictly civilian activity, that it was intended from the very beginning that the service of its members in patrol and observation flying would be used by the United States Army and Navy. And, the record shows that at the time of his original application for enlistment, and as a part of it, the appellee under oath engaged to bear true faith and allegiance to the United States of America, to obey the orders of the President of the United States and the officers appointed over him, and to serve honestly and faithfully against all enemies whomsoever.

By Executive Order No. 9339 of April 29, 1943, 50 U.S.C.A.Appendix, § 601 note (8 Fed. Register 5659), the Civil Air Patrol and all its functions and powers were transferred to the Department of War to be administered under the direction of the Secretary of War. This order was made pursuant to the authority of the First War Powers Act, 1941, 55 Stat. 838, 50 U.S.C.A. Appendix, § 601 et seq; which authorized the President "to make such redistribution of functions among executive agencies as he may deem necessary," and to transfer duties and powers from one existing department or agency of Government to another. It is to be noted that this transfer of the administration of the Civil Air Patrol from the Office of Civilian Defense to the Secretary of War occurred long after the Southern Liaison Patrol had been created on November 10, 1942, as one of the activities of the Civil Air Patrol, and two months after the appellee had reported for service there on February 10, 1943. But nothing in Executive Order No. 9339 purported to convert the Civil Air Patrol from a civilian to a military organization.

The Southern Frontier Liaison Patrol was created by Directive No. 32 of the Office of Civilian Defense, which provided that the Southern Frontier Liaison Patrol

should be established and maintained by National Headquarters of the Civil Air Patrol for the Southern Defense Command under authority granted by Headquarters Army Air Force; that the Southern Defense Command would issue through National Headquarters, Civil Air Patrol, instructions defining areas to be covered, missions to be performed, and procedure to be followed by the Civil Air Patrol Southern Frontier Liaison Patrol; that the operations of the patrol would be under the supervision of the Southern Defense Command; and that all directives, orders, and instructions issued to the patrol, except instructions issued by the Southern Defense Command to meet any special tactical situations which might arise, would be issued by and through National Headquarters. The directive also provided that the commanding officers of the Civil Air Patrol Liaison Patrol Bases would be appointed by the National Commander Civil Air Patrol, fixed the areas to be served by the patrols, and designated the titles under which the different patrols would operate. The directive further provided the requirements for enlistment for active service with a liaison patrol, the oath to be taken by those accepted for such service, and that all assignments of personnel to liaison patrols would be made by the National Headquarters of the Civil Air Patrol.

By an official press release issued by the War Department on April 29, 1943, it was announced that the operations of the Civil Air Patrol were unaffected by its transfer to the jurisdiction of the War Department. The press release recited that "Created on December 1, 1941, by the O.C.D. as a volunteer civil organization, the Civil Air Patrol will continue as such, operating as an auxiliary of the Army Air Forces under direct control of the Commanding General, A.A.F.," and that non-military activities of the Civil Air Patrol would be continued. The transfer of the Civil Air Patrol to the War Department relieved the Office of Civilian Defense of the administrative expense of operation and placed it upon the Army, but effected no change in the character of the organization. It remained a civilian organization composed of volunteer civilians rendering service of a military character to the armed forces of the nation. It was necessary in the interest of efficient operation and direction that its administration be in the hands of the War Department.

In ruling in favor of appellee, the District Court attached weight to section 3797 of the Internal Revenue Code 26 U.S.C.A. § 3797 entitled "Definitions." Subsections (a) (15) and (b) define military or naval forces of the United States as follows:

"(a) * * * (15) *Military or naval forces of the United States.* The term 'military or naval forces of the United States' includes the Marine Corps, the Coast Guard, the Army Nurse Corps, Female, and the Navy Nurse Corps, Female."

"(b) *Includes and including.* The terms 'includes' and 'including' when used in a definition contained in this title shall not be deemed to exclude other things otherwise within the meaning of the term defined."

Section 3797(a) (15) in its present form is taken from the Revenue Act of 1942, effective October 21, 1942, 56 Stat. 798. The date of its enactment was after the organization of the Civil Air Patrol on April 29, 1942, after the commencement of hostilities in World War 2, and after the institution of active duty service by the Civil Air Patrol on June 10, 1942. With this information before it Congress did not see fit to include the Civil Air Patrol within the definition of "military or naval forces of the United States." The significance of this section of the Code on the present question, if any is to be attributed to it, is that it affirmatively indicates the intention of Congress not to include the Civil Air Patrol within the definition. Later enactments of Congress point in the same direction.

By section 2 of the Act of July 1, 1946, 60 Stat. 346, Congress incorporated the Civil Air Patrol, 36 U.S.C.A. § 202. Among the stated purposes of the incorporation were "to assist in meeting local and national emergencies", and "to encourage and develop by example the voluntary con-

tribution of private citizens to the public welfare", and "to encourage and foster civil aviation in local communities". By the Act of May 26, 1948, 62 Stat. 274, 5 U.S. C.A., § 626l, Congress provided that the Civil Air Patrol is established as a volunteer civilian auxiliary of the United States Air Force. The legislative history of this Act is contained in Senate Report No. 1374, 1948 U.S.C.Cong. Service, p. 1606. In this report it is stated that: "The purpose of this bill is to establish as permanent law the Civil Air Patrol as a volunteer civilian auxiliary to the United States Air Force". And in the explanation of the bill it is said that: "The Civil Air Patrol was formed early in the last war, as a volunteer organization, to mobilize civil airmen for national defense, and for the benefit of aviation in general." Beyond question the Civil Air Patrol was from its inception a civilian organization. That it has retained its civilian character throughout its existence is shown by its treatment at the hands of Congress in the Acts discussed above. In this connection it is significant that although it was within the power of Congress at any time to include the Civil Air Patrol in a definition of military or naval forces of the United States it has never done so.

There are no decided cases dealing with the precise question presented here, but the decisions of courts and administrative rulings in analogous situations point to the same conclusion. Thus, the Bureau of Internal Revenue in I.T. 3656, 1944 Cum.Bull. 79, ruled that a member of the Civil Air Patrol is not a member of the military or naval forces of the United States, and for that reason not entitled to the benefits provided by section 22(b) (13) of the Internal Revenue Code, 26 U.S.C.A. § 22(b) (13), allowing as an exclusion from gross income certain compensation received for active service as a commissioned officer "in the military or naval forces of the United States;" nor within section 421 of the Internal Revenue Code, 26 U.S.C.A. § 421 providing for the abatement of income taxes in the case of any individual dying on or after December 7, 1941, "while in active service as a member of the military or naval forces of the United States". These sections of the Internal Revenue Code are Sections 7(a) and 8 of the Current Tax Payment Act of 1943, the Act on which appellee bases his contention here.

In Mitchell v. Cohen, 68 S.Ct. 518, 521, 522, 92 L.Ed. 774, 333 U.S. 411, the question was whether temporary members of the Volunteer Port Security Force of the Coast Guard Reserve were entitled to veterans' preference in Federal employment by virtue of the Veterans' Preference Act of 1944, 5 U.S.C.A. § 851. The Coast Guard Reserve is a military organization, a component part of the Coast Guard. The Coast Guard itself was created as a military service and is a branch of the land and naval forces of the United States. It operates as a part of the Navy, subject to the orders of the Secretary of the Navy. The service in the Coast Guard Reserve, as in the Civil Air Patrol, was wholly voluntary and largely devoted to the patrol and guarding of harbors, waterfronts, ships, etc. Its members took the same oath of allegiance as that required by regular members of the Coast Guard and were enrolled for the duration of the war. They were obligated to be on active duty for a minimum of 12 hours a week. They could not be transferred from cities in which they lived without their consent. They served without pay except for allowances for uniforms and subsistence while on active duty. And while engaged on active duty, as well as enroute to and from such duty, they held a military status, wore their uniforms, were subject to Coast Guard discipline, and were vested with the same authority as members of the regular Coast Guard of the same rank. They were not exempt from the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 301 et seq., nor were they eligible for the benefits of National Service Life Insurance. By virtue of his service in the Coast Guard Reserve, Cohen claimed the benefits of the Veterans' Preference Act which established a preference in Government employment for those "ex-servicemen and women" who had served on active duty in any branch of the armed forces of the United States during any war.

The Supreme Court denied Cohen's claim, saying that although it was undisputed that he served part time on active duty in a branch of the armed forces of the United States, nevertheless he did not fall within the designation "ex-serviceman" as used in the Veterans' Preference Act. In the opinion of the Court, Congress in the enactment of the Veterans' Preference Act had in mind only those ex-servicemen who had completely disassociated themselves from their civilian status and employment. The Court limited the benefits of the Act to "the full-fledged soldier, sailor, marine or coast guardsman."

In Commissioner v. Connelly, 338 U.S. 258, 70 S.Ct. 19, 20, 94 L.Ed. 51, the question before the Court was whether Connelly was entitled to the exclusion from gross income provided by section 22(b) (13) (A) of the Internal Revenue Code, 26 U.S.C.A. § 22(b) (13) (A). On February 19, 1943, Connelly was a civil service employee in the legal division of the Coast Guard. On that date he was enrolled as an officer in the Coast Guard Reserve under authority of the Coast Guard Auxiliary and Reserve Act, 14 U.S.C.A. § 1 et seq., which provided for such enrollment of Government employees without compensation other than that received in their civilian positions. During his service in the Coast Guard Reserve Connelly performed duties identical with those he had performed as a civilian and received the compensation authorized for that service. He remained subject to the Selective Training and Service Act. While on active duty with the Coast Guard Reserve he was required to wear the uniform of his rank as commander, was entitled to receive the courtesies of his rank, and was subject to the laws and regulations and disciplinary action of the Coast Guard. His claim was denied by the Supreme Court on the ground that while Connelly had a military status for some purposes he did not receive his compensation "'for active service as a commissioned officer'" within the meaning of section 22 (b) (13) (A), but from appropriations allocated to civil service positions.

While these decisions of the Supreme Court are not concerned with the particular section of the Revenue Act under consideration here, they emphasize the rule that one claiming the benefits of an Act of Congress passed for a particular class, or an exemption from taxation granted by Congress to persons of a particular status, must bring himself clearly within the claimed class or status, and that Acts of this character are to be strictly construed.

In the present case the appellee was never inducted into the Army through the Selective Training and Service Act, although he was required to register and was subject to induction without regard to his position in the Civil Air Patrol. While he held the rank of lieutenant, bearing on his uniform the insignia identical with that worn by a lieutenant in the Army, he was never commissioned as an officer in the Army, and the shoulder patch on his uniform identified him as a lieutenant in the Civil Air Patrol. He was never paid as an officer of the Army. He was not only a volunteer, but a volunteer for a term of service selected by him, in a service of the Civil Air Patrol also selected by him. He was not, in our opinion, at any time during this service in the Civil Air Patrol "in active service in the military or naval forces of the United States."

The judgment of the District Court is reversed, and the case is remanded for further proceedings in conformity with this opinion.