*Decisions will be entered under Rule 50.*

ESTATE OF RICHARD C. DU PONT, DECEASED, WILMINGTON TRUST COMPANY, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17261. Promulgated September 26, 1952.

*Carbery O'Shea, Esq.*, for the petitioner.
*Francis X. Gallagher, Esq.*, for the respondent.

1138

OPINION.

VAN FOSSAN, *Judge:* This case presents two questions of first impression, the first, involving the proper valuation for estate tax purposes of the insurance policies owned by decedent or in which he had an interest in trust at his death on the life of his surviving father. The pertinent portion of the statute is section 811 (a), Internal Revenue Code.[1]

On the date of his death, Richard C. du Pont owned five single premium life insurance policies which he had taken out on his father's life. Decedent also owned a one-fifth undivided interest in a trust, the sole assets of which consisted of 17 life insurance policies on the life of his father. The father survived the decedent.

The parties are not in dispute over the inclusion of decedent's interests in such policies within his gross taxable estate. They disagree only as to the proper method for evaluating the policies. It is respondent's position that the policies should be valued for estate tax purposes at the replacement cost of comparable contracts as at the critical date, or, in the absence of such replacement costs, at the interpolated terminal reserve values thereof, these latter values to be determined by application of the method used in gift tax cases.

Petitioner argues that the gift tax valuation method does not apply to estate tax, and that the cash surrender values of the policies represent the proper measures of value to be applied for estate tax purposes. We think respondent's position is correct.

In three opinions handed down the same day, the Supreme Court specifically rejected the cash surrender value as representing the proper measure of value of a single premium policy for gift tax purposes and adopted the replacement cost thereof as the better criterion for such purposes. *Guggenheim* v. *Rasquin,* 312 U. S. 254; *Powers* v. *Commissioner,* 312 U. S. 259; *United States* v. *Ryerson,* 312 U. S. 260. This rationale has subsequently been extended to include gifts of policies which were fully paid up. *Houston* v. *Commissioner,* 124 F. 2d 518; *Estate of James H. Lockhart,* 46 B. T. A. 426. "It is now settled that for estate tax purposes a valuation of annuity contracts based upon

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

(a) DECEDENT'S INTEREST.—To the extent of the interest therein of the decedent at the time of his death;

\* \* \* \* \* \* \*

replacement cost at the date of death is proper and reasonable. *Estate of Judson C. Welliver*, 8 T. C. 165; *Mearkle's Estate, et al.* v. *Commissioner*, 129 Fed. 2d 386; affirming 45 B. T. A. 894. * * *." *Estate of John L. Walker*, 8 T. C. 1107, 1111.

Petitioner apparently concedes, as it must, the force of the foregoing decisions. But it argues that they have no application to the situation before us. Several examples are set forth in petitioner's brief to prove that the cash surrender values of the policies in controversy are the only practical, realistic, and reasonable criteria to use for estate tax purposes. These examples fail to impress us as being more than mere speculation. The statute involved here requires the inclusion in decedent's gross estate of the value of all property to the extent of decedent's interest therein. There can be no question that the value of decedent's interest in the controverted policies on the day he died exceeded, with few exceptions, the cash surrender values thereof, and had such policies been transferred on that date by gift rather than by death, that the replacement costs would be the proper measures of value applicable. While there might possibly be some differences in a case where, as here, the taxable transfer was by death, we see no cogent reasons, and none have been presented, why such mode of transmission should effect any marked alteration in the value of decedent's interest in the policies so transferred. We are of the opinion that cost is the better of the suggested criteria to reflect the value of the policies to the extent of decedent's interests therein at the date of his death. Petitioner has not contested the accuracy of respondent's computations of such cost values. These computations, it appears, are in accord with the rules of evaluation laid down in the above cited cases as applied to the instant situation. Therefore, as to this issue, respondent is affirmed.

There remains the issue involving the proper interpretation to be placed upon section 939, Internal Revenue Code.[2] So far as we have been able to ascertain, this is the first time any court has had the occasion to construe and apply this section since its addition to the Code in 1949. The specific question arising here is whether the provisions of such section are applicable to the estate of the decedent, Richard C. du Pont. The pertinent facts, none of which are in dispute, follow

[2] SEC. 939. CERTAIN MEMBERS OF THE ARMED FORCES.

(a) DEATHS AFTER DECEMBER 6, 1941 AND BEFORE JANUARY 1, 1947.—The tax imposed by section 935 shall not apply to the transfer of the net estate of a citizen or resident of the United States dying on or after December 7, 1941, and before January 1, 1947, while in active service as a member of the military or naval forces of the United States or of any of the other United Nations if such decedent—

 (1) was killed in action ; or

 (2) died as a result of wounds or other injuries, or of disease, suffered while in line of duty by reason of a hazard to which he was subjected as an incident of military or naval service. * * * * * * *

The decedent was recognized and well known as an expert in glider activities. In the spring of 1943 he was appointed to be a special assistant to General H. H. Arnold, who was then Commanding General of the United States Army Air Forces. Upon his own request and recommendation, decedent was appointed to serve in a civilian capacity. The reason ascribed to the request and subsequent appointment in such capacity was to relieve decedent from the necessity incumbent upon all military personnel, of using military channels and to enable his reporting directly to General Arnold. It is well known that the military departments had many civilian experts advisers. Prior to his actual appointment, a Civil Service Commission Form No. 57 was transmitted to, completed and filed by decedent. Such form is within our judicial notice as being the standard application form for employment of civilians by the Government. Likewise, the oath of office taken and subscribed by decedent was that taken by such civilian personnel. In all other respects all action taken with regard to decedent's employment and activities was handled through civilian personnel and on standard forms prescribed for use incident to such personnel. On September 11, 1943, decedent participated as an observer in the testing of an experimental transport glider which was being developed for the Army Air Forces by a private manufacturer. The glider was piloted by a Colonel Gabel, who was at that time making a familiarization flight. While on such flight, decedent was forced to bail out and was killed when his parachute failed to fill.

It is respondent's position that the statute in question is one of exemption from tax and, therefore, requires strict construction. He argues on brief that such construction requires a person to come well within the words, as well as the reason, of the exception or proviso, and that decedent was not at any time a "member" of the military forces. On the other hand, petitioner argues for a broad construction of the term "military forces" and insists that the legislative history of the section in controversy plainly shows a congressional intent to relieve from the additional estate tax the estates of all those, whatever their technical status, who gave their lives during the war in performance of military functions, and not to limit such relief solely to those who were formally commissioned officers, warrant officers, or enlisted men.

Petitioner cites numerous cases involving other legislation wherein such statutes were held to be applicable to persons who had served with or in the armed services though technically and formally not members thereof. The cases have been carefully studied and have been found inapposite to the case before us. In each instance the statute involved was dissimilar to the one here in question and the factual situation clearly distinguishable at critical and important points.

Petitioner points to the above quoted letter from General Arnold and the language of the District Court in *Wilmington Trust Co.* v. *Mutual Life Insurance Co. of New York*, 76 F. Supp. 560, as supporting its further contention that decedent should, in substance, be treated as though he were concededly as much a member of the military forces as if he actually held a commission.

Although we have the greatest respect for the author of the afore-mentioned letter, we cannot agree entirely with the conclusions reached by him therein. While to his military mind, decedent may have been considered factually as much a member of the military establishment as any military personnel, it does not necessarily follow that decedent may be legally so considered within the purview of section 939, *supra*.

We also feel that petitioner's reliance on the *obiter dictum* expressed in *Wilmington Trust Co.* v. *Mutual Life Insurance Co. of New York*, *supra*, is misplaced. That case is one involving the same decedent wherein the court said that decedent "* * * should be treated as if he were concededly in the military service." While it be true that for insurance and certain other purposes du Pont might possibly be so treated, we do not think the same to be true in all instances—in particular, for the purposes of the tax statute in controversy. Nor do we understand the language of the District Court as meaning otherwise. If, however, it was intended to imply otherwise, then we must respectfully differ.

The section of the Code which is here under review, is clearly an exemption from tax and as such is to be strictly limited to the class of taxpayers designated. We have examined the legislative history of section 939 and have found nothing therein to indicate a contrary interpretation. The section is unquestionably intended to embrace and be applicable only to the estates of those who were formally members of the armed forces and who died under the conditions specified. Such ambiguity as might possibly arise is resolved by the statement of the Chairman of the Senate Finance Committee relative thereto, made at the time the provisions contained in section 939 were offered and accepted as a Senate floor amendment to H. R. 5268, which bill was later enacted as Public Law 378, 81st Cong., 1st sess., or the Technical Changes Act of 1949. This statement is recorded at 95 Cong. Rec. 12997, and was, in material part, as follows:

* * * this amendment simply gives to the *soldier* who died in action or received disability or wounds from which he died within the year or more following the actual termination of the war, or to his estate, *exemption* from the so-called additional estate tax. It is an amendment which is intended to protect the estates of such veterans against the estate tax.

We gave to members of the armed services relief against income taxes; and at the time we extended to them relief against income taxes I offered an amend-

ment, and strongly insisted that it be taken by the conferees *exempting* the estates of men killed in the service from the so-called additional estate tax. I am quite willing to take this amendment to conference. * * * [Emphasis added.]

In view of the foregoing unequivocal and lucid explanation, we feel that the arguments advanced by petitioner draw little support, if any, from the conference report, printed as H. R. No. 1412, the pertinent portion of which reads:

Amendment No. 12: The Senate amendment added a new section to the House bill amending subchapter B of Chapter 3 of the Internal Revenue Code to provide that the additional estate tax imposed by section 935 does not apply in the case of a citizen or resident dying between December 6, 1941, and January 1, 1947, while in military service of the United States or any of the United Nations, if the decedent was killed in action or died as the result of injuries or of disease "suffered in line of duty by reason of a hazard to which he was subjected as an incident of military or naval service." * * *

We, therefore, answer the question posed in the negative and sustain respondent as to this issue. See *United States* v. *Popham, Jr.*, 198 F. 2d 660, reversing 97 F. Supp. 63.

Reviewed by the Court.

*Decision will be entered under Rule 50.*