**ESTATE OF Richard C. DU PONT, Deceased, Wilmington Trust Company, Executor, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 11800.

United States Court of Appeals Third Circuit.

Argued April 19, 1956.

Decided May 16, 1956.

Carbery O'Shea, New York City (Donovan Leisure Newton & Irvine, New York City, on the brief), for petitioner.

Grant W. Wiprud, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Hilbert P. Zarky, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before GOODRICH, KALODNER and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

The present appeal is from a decision by the Tax Court of the United States deciding in favor of the Commissioner on two points raised by counsel for the taxpayer. 1952, 18 T.C. 1134. One of the questions is the valuation of certain life insurance policies owned by the decedent, Richard C. DuPont, on the life of his father. The other question involves an exemption from an additional estate tax imposed by section 935 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 935, found in section 939 of the Internal Revenue Code. 26 U.S.C.A. § 939 (Supp. 1955). The last point will be considered first.

The exemption just mentioned reads as follows:

"The tax imposed by section 935 shall not apply to the transfer of the net estate of a citizen * * * dying * * * while in active service as a member of the military or naval forces of the United States * * *."

The words to which we must give attention are the last ones in the quotation. Was Mr. Richard DuPont, at the time he met death in a glider accident, "a member of the military or naval forces of the United States?"

The decedent in his lifetime had acquired fame as an expert in glider activities. His experience and knowledge in this field resulted in his appointment as a member of the staff of General H. H. Arnold, Commanding General of the Army Air Forces. He was appointed a Special Assistant to the Commanding General "in charge of the Army's glider program for air transport of Army troops and cargo by gliders * * *." This quotation is taken from the findings of fact which in turn were largely composed of a stipulation between the parties which was adopted by the court. If living the General would have testified "Factually, he was as much a member of our military establishment as though he held a commission. He gave his life in military service as actually as any officer in uniform, in actual military combat." The reference to the giving of his life was to the fact that Mr. DuPont had been killed in a glider accident while in the performance of his duties as special consultant.

There is no doubt that Mr. DuPont gave his life in the service of his country. Nevertheless, we think it clear that he did not come within the exception to section 935 already referred to. The reasons are to be found in the facts stipulated between the parties. Mr. DuPont filed a Civil Service Commission form. He was appointed as "Special Consultant." His appointment was for a brief period, ninety days at the start. There was a special arrangement about his pay. It was to be $25.00 for each day he worked. His travel applications and orders were issued from the civilian personnel division of the office of Chief of Air Staff. It is quite clear to us that the Tax Court was correct in finding that the decedent was employed by the United States in a civilian capacity because that was a more convenient form of employment for him to have to accomplish the things which his expert knowledge would help him accomplish for the air force.

The undefinitive legislative history of this exemption paragraph is set out in

the Tax Court's opinion and will not be repeated here.[1] Compare also for a comparable though not similar situation, Commissioner of Internal Revenue v. Connelly, 1949, 338 U.S. 258, 70 S.Ct. 19, 94 L.Ed. 51; likewise, for a case where the taxpayer had many more of the indicia of military service than we have in the present case, United States v. Popham, 8 Cir., 1952, 198 F.2d 660.

The second question is more difficult. The decedent owned, at the time of his death, some insurance policies upon the life of his father who was then living. He also owned an interest in a trust of other life insurance policies upon the life of his father. But the questions here involved will be settled if we consider only the first group.

It is conceded that the passing of these policies from the living to his successors is subject to tax "To the extent of the interest therein of the decedent at the time of his death   *   *   *" under section 811(a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 811(a). The dispute here concerns a criterion to determine the extent of the decedent's interest at the time of his death, in other words, valuation. The Commissioner contends that the value is replacement cost, that is, what it would cost to go out and get, on the effective date, this policy from the same or other insurance company. If such policies could not be purchased, then the value is to be set at interpolated terminal reserve. This is the reserve value which the company keeps on its books against its liability on the contracts plus the adjustment of the reserve to the specific date in question. Commissioner of Internal Revenue v. Edwards, 7 Cir., 1943, 135 F.2d 574, 576. The petitioner says the policy should be included in the gross estate "at the present value of the face amounts of the policies but at not less than their cash surrender values."[2]

We have no direct authority in point. The petitioner has cited us some discussions by writers and a decision or two which we think too far away from the point at issue to be worth carrying into citation.

If the question were one with regard to an inter vivos gift of an insurance policy the law is well settled, by now, that the rule contended for by the Commissioner in this case is to be followed. Guggenheim v. Rasquin, 1941, 312 U.S. 254, 61 S.Ct. 507, 85 L.Ed. 813; Powers v. Commissioner, 1941, 312 U.S. 259, 61 S.Ct. 509, 85 L.Ed. 817; United States v. Ryerson, 1941, 312 U.S. 260, 61 S.Ct. 479, 85 L.Ed. 819; Houston v. Commissioner, 3 Cir., 1941, 124 F.2d 518; Phipps v. Commissioner, 1941, 43 BTA 790; Lockhart v. Commissioner, 46 BTA 426 (1942).

The taxpayer argues that we should not apply this rule to the case of an estate tax. It is contended that no one would make a gift of a life insurance policy unless the understanding with the donee was that he wanted the life insurance protection and would keep the policy. Where this information as to mental state of donors and donees comes from we do not know. Then the argument continues that the only value which an insurance policy on the life of another person has to the executor is its cash surrender value. The executor, it is argued, may not properly keep this insurance policy on the life of another in the estate because it does not produce enough income.

We do not go along with this argument by the petitioner. He cites us no authority that the executor must imme-

1. See 1952, 18 T.C. 1134, 1142. That the legislators were thinking in terms of "servicemen" finds additional support in a committee report which accompanied the bill extending the exemption to victims of the Korean conflict. S.Rep. No. 781, 82d Cong., 1st Sess. VIII, B, 1 (1951).

2. If the terms of this claim seem ambiguous, the language is the petitioners, not ours. It is doubtless used in an effort to tie up the solution of the question with an earlier regulation hereafter discussed.

diately cash in life insurance policies which the decedent owned on the life of another. Nor can we accept his argument that in all cases the value would not be anything more than the right to get the money at the cash surrender value. If the named insured were advanced in years and in precarious health, it might well be that the actual value, as a practical matter, is far more than the cash surrender value which the company by its charts and tables would be willing to pay on the policy on a given date.

But, as we remarked in Mearkle's Estate v. Commissioner, 3 Cir., 1942, 129 F.2d 386, 388, these matters lie in the field of speculation or at best discussion. As pointed out by the Supreme Court in the Guggenheim case, supra, a life insurance policy is not a simple contract to pay money but a complex kind of a chose in action. The right to keep it to collect money at a future date may be worth more than the right to get today that part of the policy which, under the company's contract, is called its cash surrender value.

There is some advantage in having rules applicable to estate tax go along parallel with those applicable to gift tax since one is if not altogether complementary at least related to the other.[3] This does not mean that this parallelism must follow in every case. In a case where the rule is set in gift tax as it is in this situation, it is not unreasonable for the administrative arm of the government to adopt that rule for the similar problem in estate tax. This it has done by a 1952 amendment to the regulations which by its terms is to be given retroactive effect.[4]

The taxpayer argues that the amendment to the regulation changes the rule theretofore established also by regulation and cannot be applied retroactively to a situation which arose before the current amendment was promulgated.

If the earlier regulation did in fact cover the type of problem presented by this case, the argument would require very thoughtful consideration. But we disagree with taxpayer's contention on the effect of the regulation. In our view the original regulation did not offer a solution to the problem here. Taxpayer cites a section which at first blush appears applicable because of general language about "future payments."[5] Yet the catch line heading this provision, "Annuities, life, remainder, and reversionary interests", indicates a much more limited scope, which we do not think properly expanded to cover an ordinary insurance policy on the life of another. And taxpayer himself puts in question the appropriateness of the regulation when he adds his own gloss to the method prescribed. "Present value" becomes "present value but not less than cash surrender value."

When under the Code of 1939 the regulation was drawn which governs the valuation of a gift of insurance on the life of another, the proper method had been made clear by court decisions and the established approach was reflected in the regulation.[6] At the time the regulation which taxpayer now cites was drafted there was no case law indicating the appropriate treatment for the comparable estate tax situation. With such a state of affairs we think it more reasonable to conclude that a regulation making no specific reference to insurance on the life of another was not designed to offer a definitive solution to a unique and complicated problem of valuation.

As we pointed out in a similar situation in the Mearkle case, cited above, here is a situation where it may well be that more than one method of valuation could be established as reasonable. A good case could be made, perhaps, for saying that what passed on from the dead to his executor was what the executor could get for this policy by

---

3. Harris v. Commissioner, 1950, 340 U.S. 106, 107, 71 S.Ct. 181, 95 L.Ed. 111.

4. T.D. 5906, 1952–1 Cum.Bull. 155, para. 1.

5. U.S.Treas.Reg. 105, § 81.10(*i*)(3) (1942).

6. U.S.Treas.Reg. 108, § 86.19(*i*) (1943).

**214**

turning it into money. As already said, however, that omits certain elements in the life insurance contract which may well change the rule when we decide upon its "value" at a particular time. When more than one rule is possible and the Commissioner has laid down one in complete accordance with the rule for gift taxation and which is not in itself unreasonable, we cannot say that the determination is so arbitrary as to be unlawful.

The decision of the Tax Court will be affirmed.