ESTATE OF ETHEL M. DONALDSON, DECEASED, RICHARD F. DONALDSON, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 66771.   Filed January 16, 1959.

*Sidney D. Griffith, Esq.,* and *William N. Postlewaite, Esq.,* for the petitioner.
*David M. Robinson, Esq.,* for the respondent.

#### OPINION.

TIETJENS, *Judge:* The Commissioner determined a deficiency in estate tax of $19,046.63.

The question for decision is whether the Commissioner properly included the replacement value of certain policies of life insurance in decedent's gross estate.

All of the facts are stipulated, are so found, and the stipulation of facts together with the pertinent exhibits are included herein by this reference.

Ethel M. Donaldson died testate on May 16, 1953, at the age of 70 years.   On June 30, 1953, her last will and testament was admitted to probate by the Franklin County, Ohio, Probate Court and her son, Richard F. Donaldson, was appointed executor.   The Federal estate tax return for the estate was filed with the district director of internal revenue at Columbus, Ohio.   Decedent was survived by her husband, Sterling Donaldson; her son, Richard F. Donaldson; and two granddaughters, the children of her deceased daughter.   By the terms of her will, dated July 30, 1935, decedent's estate was bequeathed to her husband, but he renounced the will and elected to take his statutory interest amounting to one-third of the estate.

On August 28, 1925, Sterling applied for and was issued a life insurance policy on his own life by the Midland Mutual Life Insurance Company, designated policy No. 63676, in the face amount of $50,000.   Ethel was named beneficiary.   The policy provides that the beneficiary "shall not * * * have any vested interest hereunder"; and that the "[i]nsured may, before the maturity of the policy, change the beneficiary named herein, if this policy is not then assigned."

On August 19, 1935, Sterling executed and delivered to the company an instrument relative to the above insurance policy entitled "Change of Beneficiary and Election of Method of Settlement" which was agreed to by the company and made a part of the policy on Au-

gust 20, 1935, dealing with the appointment of beneficiaries and the assignment of policy. Thereafter, the original policy was delivered to the decedent and was in her possession on the date of her death. Prior to the execution of the above instrument, Sterling paid all premiums on the policy, and after August 20, 1935, decedent paid the premiums until the policy was fully paid up on August 14, 1945. As of May 16, 1953, the date of death of the decedent, the cash surrender value of this policy was $33,016.50 and the replacement cost was $42,273.50.

The "Non-Forfeiture Provisions" section of the policy provides for loans to be made by the company on the proper assignment of the policy to it, and for the cash surrender of the policy.

The above-mentioned "Change of Beneficiary and Election of Method of Settlement" instrument dated August 20, 1935, provides in part as follows:

Section IV. The insured [Sterling] hereby waives the right to make any further change of beneficiary under said policy and/or to change the method of payment of the proceeds thereof, and does hereby assign, transfer and set over all his rights, title and interest in and to said policy to the beneficiaries hereinbefore referred to in the manner, shares and proportions and only upon the terms and conditions hereinbefore set forth.

Ethel was designated the primary beneficiary in this instrument and other individuals were named as contingent beneficiaries should she not be living at the death of the insured.

On November 23, 1934, Sterling applied for and was issued a life insurance policy on his own life by the Mutual Life Insurance Company of New York, designated policy No. 4,905,298, in the face amount of $25,000. On October 1, 1935, the policy was endorsed and riders attached to the policy dealing with the mode of settlement, appointment of beneficiaries, and rights under the policy. Sterling designated decedent as primary beneficiary under this policy if she were living at his death, and designated certain other beneficiaries in the event decedent should not be living at his death. On the same date, two riders were endorsed on the face of this policy; one summarized the change of beneficiaries and the other reserved all rights conferred by the policy on the beneficiaries in the order named without the consent of the insured or any subsequent beneficiary. On or about October 1, 1935, the policy was delivered by the insured to the company for the purpose of endorsing certain changes dealing with the mode of settlement, appointment of beneficiaries, and rights under the policy, and at his request on October 1, 1935, the policy was endorsed and certain riders were attached to the policy effecting these changes and the insured thereby surrendered all rights in the policy. Thereafter, the original policy with the endorsement and riders was redelivered

to the insured, who thereafter delivered the same to the decedent, and it was in her possession on the date of her death. Ethel neither exercised nor attempted to exercise any of the rights under the policy during her lifetime. Prior to October 1, 1935, the insured paid all premiums due on the policy and after October 1, 1935, until the date of her death, Ethel paid all the premiums due on the policy. As of May 16, 1953, the cash surrender value of this policy was $9,894.66 and the replacement cost was $10,391.42.

The above-mentioned policy No. 4,905,298 contains provisions for loans and payment of cash value upon the policy being surrendered to the company.

The two riders endorsed on the face of the policy dated October 1, 1935, and signed on behalf of the company provide as follows:

THE BENEFICIARY is changed to Ethel M. Donaldson, wife of the Insured, if living, if not, Virginia M. Donaldson and Richard F. Donaldson, children of the Insured, the children of said children, Roscoe C. Donaldson and Otto Donaldson, brothers of the Insured, and Marcus R. Miller and Merritt F. Miller, brothers-in-law of the Insured, and the executors or administrators of the last survivor of said wife, said children of the Insured, the children of said children of the Insured, said brothers and said brothers-in-law, all as provided in the Mode of Settlement attached hereto. All rights reserved to the beneficiary.

RIGHTS: Anything in this policy to the contrary notwithstanding, prior to the maturity of this policy, Ethel M. Donaldson, wife of the Insured, if living, if not, Virginia M. Donaldson and Richard F. Donaldson, children of the Insured, jointly, or the survivor, if neither survive, such of the children of said children as shall be living jointly, if none be living, Roscoe C. Donaldson, and Otto Donaldson, brothers of the Insured and Marcus R. Miller and Merritt F. Miller, brothers-in-law of the Insured jointly, the survivors or survivor, if none survive, the executors or administrators of the last survivor of said wife, said children, said children of said children and said brothers and brothers-in-law of the Insured, the beneficiaries may, without the consent and to the exclusion of the Insured or any other beneficiary, receive, exercise, and enjoy every benefit, option, right, and privilege conferred by this policy or allowed by the Company.

Decedent applied for and was issued two policies on the life of Sterling by the Ohio State Life Insurance Company on April 4, 1941, and May 7, 1941, designated policy No. 175,343 in the face amount of $25,000, and policy No. 176,005 in the face amount of $5,000, respectively. A "Settlement Agreement" and a "Control of Policy Rider" were executed by the decedent on each policy on the same date as the application. In the settlement agreement decedent directed and agreed that "if and when the said policy shall become a claim through the Insured's death" the company should dispose of the proceeds in the manner thereafter specified, i.e., to decedent, if she survived the insured; if not, then to other named persons. The beneficiary provisions were made irrevocable. Decedent paid all premiums on these policies until the date of her death. On May 16, 1953, the cash surrender

values of these policies were $7,304 and $1,450, and the replacement costs of such policies were $8,322.72 and $1,672.99, respectively.

There are contained in the policies provisions for loans and payment of cash values upon the policies being surrendered to the company. In the table of guaranteed values the amounts for cash and loan values are the same.

The "Control of Policy Rider" dated April 4, 1941, and signed by Ethel for policy No. 175,343 provides in part as follows:

Attached to and made a part of Policy No. 175343 on the life of Sterling Donaldson.

The application for this policy having been made by Ethel M. Donaldson of Columbus, Ohio, herein referred to as the Applicant, it is hereby understood and agreed that this policy is issued and delivered subject to the following conditions, to-wit:

ONE: That the policy contract is made with the Applicant and that the Applicant shall have the right to receive every benefit and to exercise every right and privilege conferred by, or referred to in, said policy without the consent or joinder of the Insured or any other person, anything in said policy contained to the contrary notwithstanding.

TWO: That any notices shall be sent to, and premiums are to be paid by, the Applicant.

An identical statement, except as to the number of the policy, was made in the "Control of Policy Rider" dated May 7, 1941, with respect to policy No. 176,005.

Decedent's executor elected to have the gross estate of decedent valued in accordance with values as of the date of death.

Sterling filed a Federal gift tax return for 1935 with the district director at Columbus, Ohio, with respect to policy No. 63676 of the Midland Mutual Life Insurance Company, and policy No. 4,905,298 of the Mutual Life Insurance Company of New York. The donee with respect to both policies was designated as Ethel. The gift tax return showed the date of the gift as September 1, 1935, and the value of policy No. 63676 to be $10,998.68, and the value of policy No. 4,905,298 to be $813.72.

In the estate tax return no amount was reported as the value of the insurance policies in arriving at the gross estate.

The Commissioner determined that the amount of $62,660.63 should be included, with the following explanation:

It is held that the value of certain insurance policies with a fair market value of $62,660.63 at date of death are includible in decedent's gross estate under the provisions of section 811 of the Internal Revenue Code of 1939.

Section 811(a) of the Internal Revenue Code of 1939 provides that the gross estate shall include the value of all property, real or personal, tangible or intangible, "to the extent of the interest therein of the decedent at the time of his death."

Decedent predeceased her husband and the issue is whether the decedent had any interest in the insurance policies on his life, the value

of which is properly includible in her gross estate. We point out that we are not dealing with the includibility of life insurance proceeds.

In its broad sense, petitioner's argument is that the decedent had no ownership in the insurance policies which had value. We disagree with this argument for the reasons which will hereafter appear and hold that no error has been shown in the Commissioner's determination.

### The Midland Mutual Policy.

This policy was applied for by and issued on the life of decedent's husband. The decedent was named beneficiary. The insured retained the privilege of changing the beneficiary and the policy provided that the beneficiary should not have a vested interest. The policy further provided for loan and cash surrender values upon proper assignment. In August of 1935 the insured executed a "Change of Beneficiary and Election of Method of Settlement" instrument in which deceased was named primary beneficiary and certain others were named contingent beneficiaries, should she not be living at the death of the insured. Pursuant to this instrument the insured waived his right to make any further change of beneficiaries, but at the same time assigned and transferred all his right, title, and interest in the policy to the beneficiaries "in the manner, shares and proportions" and on the "terms and conditions" set forth in the instrument. Thereafter the policy was delivered to the decedent and a gift tax return was filed by the insured naming decedent as the donee. The value of the policy was reported in the gift tax return as $10,988.68. The decedent from that time paid all the premiums until the policy became paid up in 1945. The policy was in her possession at her death. She predeceased the insured.

The rights of the decedent are to be determined by the terms of the policy. Under the law of Ohio, which is here applicable, *Louise C. Moore, Executrix*, 33 B.T.A. 108, a policy of insurance is a contract and is to be construed accordingly. *Oetting* v. *Sparks*, 109 Ohio St. 94, 143 N.E. 184.

On the facts of record we cannot say decedent had no ownership in the Midland Mutual policy. To the contrary we think she was the virtual owner thereof. Her husband delivered the policy to her, made a gift tax return naming her as donee of the policy, and divested himself of all his right, title, and interest by assignment to the "beneficiaries." See *First Trust Co.* v. *North Western Mut. Life Ins. Co.*, 204 Minn. 244, 283 N.W. 236. Petitioner argues, however, that since this assignment was to the "beneficiaries" it was to them as a class, and consequently, that deceased had no rights thereunder which she could exercise without the joinder of the others. We do not accede to this contention. Deceased was the primary beneficiary of this

policy, and under the terms of the instrument containing the assignment, as we interpret them, the other beneficiaries had no rights except upon her death. The language of the assignment itself specifically limits the interests of the beneficiaries thereunder to the "manner, shares and proportions and only upon the terms and conditions" set forth therein. As noted above, deceased was the primary beneficiary and the others had no rights except those contingent on her death.

While living, decedent under the assignment stepped into the shoes of the insured and we perceive no reason why she could not have exercised any of the rights or privileges, such as loan or cash surrender, that the insured had had in the policy.

On the facts and the inferences to be reasonably drawn from them, we think the insured intended to and did make a gift of the policy to his wife, the deceased; that by virtue thereof she became the owner of the policy; that during her life she was entitled to exercise valuable rights and privileges in the policy and that no one else had any vested rights therein. Accordingly, the Commissioner properly included the policy in decedent's gross estate at its replacement value at the time of her death. *Estate of Richard C. du Pont*, 18 T.C. 1134, affd. 233 F. 2d 210 (C.A. 3), certiorari denied 352 U.S. 878.

### The Mutual Life Policy.

This policy, like the one discussed above, was applied for by and issued to decedent's husband. It contained loan values and cash surrender privileges as well as the right to change the beneficiary. The deceased was first named sole beneficiary. In October 1935 the beneficiary changes hereinbefore outlined were made, with decedent remaining the primary beneficiary if she were living; the policy was delivered to decedent by her husband; she thereafter paid all premiums; and the insured included the policy in the gift tax return noted above and named decedent as the donee thereof.

As we interpret the riders attached to the policy which are set out above, the decedent was the primary beneficiary and while she was living she was entitled, to the exclusion of the insured and of any other beneficiary, to "receive, exercise and enjoy every benefit, option, right and privilege" under the policy. With respect to this policy petitioner says on brief:

It should be noted that the policy was never assigned to Ethel M. Donaldson, yet all rights and privileges in and to the policy were specifically reserved to her as the primary payee, which she could exercise without the consent of and to the exclusion of the insured and any subsequent or contingent payee.

\*　　\*　　\*　　\*　　\*　　\*　　\*

In effect, Ethel M. Donaldson had every conceivable right in the policy *except ownership*. It is obvious that she had no ownership because upon her death her heirs or executors took nothing. The secondary payees took those same rights that she had immediately preceding her death from the terms of the contract.

We think petitioner's conclusion is erroneous. As we see it, decedent had valuable rights in the policy which she could have exercised during her lifetime and the fact that she failed to exercise those rights does not prevent the replacement value of the policy from being included in her gross estate. See *Estate of Richard C. du Pont, supra.*

### The Ohio State Life Policies.

These policies were applied for by and issued to decedent on the life of her husband. She retained them and paid the premiums until her death. They contained the usual provisions for loans and the payment of cash values.

True, the beneficiaries were irrevocably named but this does not mean that their rights as such prior to the maturity of the policies as death claims could not have been avoided by the decedent through the exercise of the cash surrender or loan privileges. The "Control of Policy Rider[s]" referred to above specifically stated that the policy contract was made with the applicant (the decedent) and that the applicant—

shall have the right to *receive every benefit and to exercise every right and privilege conferred by the * * * said policy without the consent or joinder of the Insured or any other person,* anything in said policy contained to the contrary notwithstanding. [Emphasis supplied.]

This clearly means that the decedent could negate by her own and only action the contingent rights of the other named beneficiaries before the death of the insured. Decedent had valuable rights in the policies, was the virtual owner thereof, and it was proper to include the replacement values of the policies in the gross estate.

Petitioner has cited numerous cases dealing with the vesting of rights in beneficiaries of life insurance policies. We have given careful study to these cases. It is apparent, however, that each turns upon the terms of the particular policy involved and we have not found any which would control this case.

*Decision will be entered for the respondent.*